UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERLENE FAY WILSON SUJO,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:15-cv-1049-CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.   BACKGROUND

Plaintiff, born May 31, 1955, applied for SSI benefits on January 13, 2009, alleging disability beginning August 26, 2008. Administrative Transcript ("AT") 174. Plaintiff alleged she was unable to work due to diabetes, high blood pressure, back pain, carpal tunnel syndrome, headaches, and depression. AT 201. In a decision dated November 23, 2010, the ALJ

////

1

determined that plaintiff was not disabled.[1]  AT 13-23.  However, this action was remanded for further proceedings by the United States District Court after plaintiff appealed the ALJ's final decision.  AT 803-14.  Accordingly, further administrative proceedings were held in this matter and, on May 28, 2014, the ALJ again determined that plaintiff was not disabled.  AT 615-28.  In support of that determination, the ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since December 29, 2008, the application date.
>
> 2. The claimant has the following severe impairments: status post L3-4 discectomy and fusion surgery, multilevel cervical

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

> degenerative disc changes and C6-7 disc protrusion, carpal tunnel syndrome, obesity and diabetes.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of both medium and light work as defined in 20 CFR 416.967(c).
>
> 5. The claimant is capable of performing past relevant work as a van driver, a merchandise driver, a casino hostess, a stock clerk and a flagger. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 6. The claimant has not been under a disability, as defined in the Social Security Act, since December 29, 2008, the date the application was filed.

AT 618-28.

## II. ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) improperly considered the opinion of Family Nurse Practitioner Deanna McConnell ("FNP McConnell") when determining plaintiff's residual functional capacity ("RFC"); and (2) improperly found plaintiff's testimony regarding the extent of her pain and symptoms to be less than fully credible.

## III. LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

3

"The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV.  ANALYSIS

   A.  The ALJ did not err in Assessing FNP McConnell's Opinion

First, plaintiff argues that the ALJ erred in assigning "minimal weight" to the opinion of FNP McConnell because the ALJ failed to provide germane reasons in support of that determination.

As a family nurse practitioner, FNP McConnell qualifies as an "other source" under the Social Security Administration's regulations.[2] 20 C.F.R. § 416.913(d)(1) (including nurse practitioners as an "other source"). Although an ALJ may give more weight to an opinion of an "acceptable medical source" over an "other source," see 20 CFR § 416.927; Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996), the ALJ may not completely disregard an opinion from an "other source" merely because it is not an "acceptable medical source." See Social Security Ruling ("SSR")[3] 06-03p ("[T]here is a requirement to consider all relevant evidence in an

---

[2] Both plaintiff and the Commissioner agree that FNP McConnell was not an "acceptable medical source" within the meaning of the Social Security Administration's regulations. ECF No. 14 at 4; ECF No. 15 at 10. Instead, both parties agree that FNP McConnell was an "other medical source" and that the ALJ was required to provide only germane reasons for discounting her opinion. Id.

[3] The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy."

4

individual's case record . . . ."); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (noting that the Regulations require an ALJ to "consider observations . . . by non-medical sources"). As the Commissioner has recognized, "the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity . . . [T]he adjudicator generally should explain the weight given to opinions from these 'other sources[.]'" SSR 06-03p, 2006 WL 2329939, at *6. "Although [the Regulations] do not address explicitly how to evaluate evidence (including opinions) from 'other sources,' they do require consideration of such evidence when evaluating an 'acceptable medical source's' opinion." Id. The ALJ may discount testimony from "other sources" if the ALJ "gives reasons germane to each witness for doing so." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010)); Meza v. Astrue, 2012 WL 5874461, at *3 (C.D. Cal. Nov. 20, 2012) (unpublished) (citing Molina, 674 F.3d at 1111) ("Statements from 'other sources' are competent evidence that an ALJ must take into account, unless he expressly determines to disregard such evidence and gives reasons germane to each witness for doing so.").

The ALJ assigned "minimal weight" to FNP McConnell's opinion because she was not "an acceptable medical source" and "her findings of such substantial limitation are not consistent with the longitudinal medical record." AT 625-26. Plaintiff contends that these were not germane reasons for discounting FNP McConnell's opinion.

First, plaintiff contends that the Commissioner's own rulings prevented the ALJ from relying on the fact that FNP McConnell was not an "acceptable medical source" as a reason to discount her opinion. In particular, plaintiff asserts that the ALJ's reasoning contravened the

---

Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although "SSRs do not carry the 'force of law,' . . . they are binding on ALJs nonetheless. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009) (citation omitted). Social Security rulings "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

5

standards set forth in Social Security Ruling ("SSR")[4] 06-03p, which requires consideration of opinions issued by medical sources who are not acceptable medical sources and notes that it may be appropriate under certain circumstances for an ALJ to assign greater weight to the opinion of such a source over that of an opinion provided by an acceptable medical source. 2006 WL 2329939, at *5. Therefore, plaintiff contends, it was improper for the ALJ to have discounted FNP McConnell's opinion based on the fact that she was not an acceptable medical source.

A review of the ALJ's decision, however, shows that the ALJ properly assessed FNP McConnell's opinion under the applicable standards. The ALJ considered FNP McConnell's opinion and did not totally discount it merely because FNP McConnell was not an acceptable medical source. Instead, the ALJ assigned her opinion "minimal weight," and determined that the physical RFC opinions of Dr. Kinnison, an acceptable medical source who examined plaintiff for purposes of determining disability under the Act, and Dr. Dann, a State agency reviewing physician who was also an acceptable medical source, were entitled to greater weight. AT 624-26. SSR 06-03 specifically states:

> "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as we previously indicated in the preamble to our regulations . . . 'acceptable medical sources' 'are the most qualified health care professionals.'"

2006 WL 2329939, at *5 (citation omitted). Accordingly, the ALJ appropriately assigned greater weight to the opinions in the record issued by acceptable medical sources regarding the functional impact of plaintiff's physical impairments over that of the contradictory opinion provided by FNP McConnell, a non-appropriate medical source. In turn, it was appropriate for the ALJ to cite the fact that FNP McConnell was not an appropriate medical source as a factor in support of his

---

[4] Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). Social Security Rulings are "binding on all components of the Social Security Administration." Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); cf. Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations.").

1 determination that her opinion was entitled to reduced weight.

2 Moreover, the ALJ also provided an additional reason for discounting FNP McConnell's opinion that was sufficiently germane: that the longitudinal record regarding plaintiff's physical impairments contradicted the extreme limitations opined by FNP McConnell. AT 624-25. Plaintiff argues that the ALJ failed to elaborate on this reasoning in sufficiently specific detail such that it cannot be considered a germane reason in support of his determination. While the ALJ did not fully elaborate on what evidence supported this reasoning in his immediate discussion of FNP McConnell's opinion, he provided substantial support for this reasoning throughout his broader discussion of the medical evidence with regard to plaintiff's RFC. See AT 621-27.

11 Indeed, the medical evidence in the record generally shows that plaintiff's physical condition throughout the relevant period did not cause limitations nearly as severe as those opined by FNP McConnell. As the ALJ discussed, after plaintiff underwent a second spinal fusion surgery in 2007, there is no evidence in the record that plaintiff received anything more than conservative care or treatment for her back impairments. AT 623. To be sure, plaintiff's medical records from the relevant period show that she received care only in the form of medications and recommendations to diet and exercise and that the symptoms from her physical impairments were improving and generally well controlled with that course of treatment. E.g., AT 1000-02, 1007-09, 1014-16, 1025, 1037, 1058, 1073. There is no evidence in the record suggesting she required additional surgery, had to undergo physical therapy, or received additional chiropractic or pain management care for her back condition during the relevant period.

22 Similarly, the record shows that plaintiff successfully underwent surgeries to release trigger thumbs on both of her hands — with a surgery for her right hand occurring in February 2009, and for her left hand in March 2010. AT 407-08, 412. After these surgeries, physical examination showed that both of plaintiff's upper extremities had intact sensitivity with normal muscle strength in the left extremity and only slightly diminished strength in the right extremity. AT 984. The record does not indicate that plaintiff required anything more than conservative treatment after those surgeries took place. Furthermore, plaintiff testified that she retained the

1  manual dexterity to complete a number of daily activities with only some moderate difficulties.
2  AT 765-66, 768.

3       Despite the objective medical evidence indicating that plaintiff's spinal and upper
4  extremity-related impairments were improved with successful surgeries and that plaintiff's
5  conditions were relatively well controlled with conservative care after those surgeries, FNP
6  McConnell opined that plaintiff had extreme limitations stemming from those impairments, such
7  as her findings that plaintiff could lift and carry no more than 10 pounds rarely; sit, stand, or walk
8  fewer than 2 hours total and fewer than 4 hours combined in an 8-hour workday; rarely
9  bend/stoop, squat, crawl, climb, or crouch; and never climb, kneel, reach up, or push and pull.
10  AT 977.  The ALJ was permitted to rely on this evidence to discount FNP McConnell's opinion.
11  See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (holding that the ALJ properly
12  discounted a treating physician's functional recommendations that "were so extreme as to be
13  implausible and were not supported by any findings made by any doctor"); Meanel v. Apfel, 172
14  F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion
15  rejected).

16       The ALJ also found that the functional limitations opined by Dr. Kinnison and Dr. Dann
17  were well supported by the medical evidence in the record — a determination that plaintiff does
18  not contend to have been erroneous.  AT 625-26.  Those two physicians opined functional
19  limitations far less severe than those opined by FNP McConnell.  See AT 341-45, 981-85.  At
20  bottom, there was substantial evidence in the record supporting the ALJ's determination that the
21  severe physical functional limitations opined by FNP McConnell were not supported by
22  plaintiff's longitudinal medical records.

23       Plaintiff also asserts that the long-standing treatment relationship between FNP
24  McConnell and plaintiff entitles her opinion to greater weight than what was assigned by the ALJ.
25  While the extent of the treatment relationship is one factor for the ALJ to consider, it is not
26  controlling, because in virtually every case the treating source would have a more extensive
27  relationship with the claimant than a consultative specialist.  Here, the ALJ appropriately
28  determined that the physical limitations opined by Dr. Kinnison and Dr. Dann — acceptable

medical sources — were more persuasive in light of the evidence in the record.

In short, the ALJ provided germane reasons for assigning lesser weight to FNP McConnell's opinion that were supported by substantial evidence from the record. Accordingly, the ALJ did not err in considering that medical evidence.

B.     The ALJ's Adverse Credibility Determination was not Erroneous

Next, plaintiff argues that the ALJ erred by determining that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms was not entirely credible.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7p; SSR 95-5p; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant non-exertional impairment. See Flaten v. Secretary of

1 HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own

2 observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

3 substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

4 "Without affirmative evidence showing that the claimant is malingering, the Commissioner's

5 reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v.

6 Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

7      Here, the ALJ found plaintiff's testimony to be less than fully credible because plaintiff's

8 statements regarding the intensity, persistence, and limiting effects of her symptoms were

9 inconsistent with the evidence of plaintiff's daily living activities and with the medical evidence

10 in the record.  AT 622-25.  These were clear and convincing reasons in support of the ALJ's

11 adverse credibility determination.

12      First, the ALJ properly determined that evidence of plaintiff's daily activities in the record

13 indicated that plaintiff's functional capacity was more robust than what plaintiff claimed.  "While

14 a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may

15 discredit a claimant's testimony when the claimant reports participation in everyday activities

16 indicating capacities that are transferable to a work setting . . . Even where those activities suggest

17 some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the

18 extent that they contradict claims of a totally debilitating impairment."  Molina, 674 F.3d at 1112-

19 13 (citations and quotation marks omitted); see also Burch, 400 F.3d at 680 (ALJ properly

20 considered claimant's ability to care for her own needs, cook, clean, shop, interact with her

21 nephew and boyfriend, and manage her finances and those of her nephew in the credibility

22 analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's

23 determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and

24 occasionally care for his friend's child" was a specific finding sufficient to discredit the

25 claimant's credibility).

26      Here, plaintiff testified that she cared for her own personal needs and did household

27 chores such as laundry, vacuuming, mopping, and scrubbing the bathtub and shower.  AT 765.

28 Plaintiff also testified that she cooked meals four times a week, went grocery shopping every

week, and went out to dinner on an almost weekly basis. AT 765, 768. She further stated that she watched her three young grandchildren on the weekends. AT 768, 770. Furthermore, the third party reports in the record indicate that plaintiff also performed activities such as caring for her cats, cleaning dishes, and driving a car, and went outside "as often as she wants." AT 209-226.

Such reported activities belied plaintiff's claims that her impairments caused her knees to buckle whenever she would "bend, lift, sit, [or] stand for any length of time." AT 201. They also undermined her more general claim that her impairments rendered her unable to perform any full time work. To be sure, the record also contains some evidence that plaintiff's impairments caused her to be somewhat inhibited in her ability to physically perform some of the above daily activities. However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment regarding the significance of plaintiff's reported activities to be reasonable and supported by substantial evidence. See Rollins, 261 F.3d at 857 (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one").

The ALJ also properly considered the fact that plaintiff's claims of debilitating symptoms and pain were contradicted by the medical evidence in the record indicating that plaintiff's impairments were less functionally impactful. Here, the medical record was replete with evidence showing that plaintiff's impairments caused her limitations that were less than disabling. For instance, Dr. Kinnison, an examining physician, opined that that plaintiff had the ability to lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk up to 6 hours total in an 8-hour workday, and sit, balance, kneel, crawl, reach handle, finger, and feel without limitation. AT 985. Similarly, the objective clinical findings regarding plaintiff's physical impairments repeatedly showed that plaintiff had negative straight leg raises, largely normal manual dexterity and muscle strength after undergoing surgery on both hands, and generally exhibited normal examination findings. E.g., AT 340, 412, 430, 983-85. Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom

testimony, it was nevertheless a relevant factor for the ALJ to consider. <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005). Accordingly, the ALJ did not err by considering such evidence in support of his adverse credibility determination.[5]

V. <u>CONCLUSION</u>

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is granted; and

3. Judgment is entered for the Commissioner.

Dated: March 15, 2016

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 sujo1049.ss

---

[5] Plaintiff also appears to assert in her motion for summary judgment that the ALJ erred in his consideration of the third party statements provided by plaintiff's mother and daughter-in-law. However, a review of those statements demonstrate that these two third party witnesses provided testimony regarding the extent of plaintiff's symptoms and limitations that largely reflected those alleged by plaintiff herself. <u>See</u> AT 209-26. Indeed, plaintiff herself appears to admit that their statements were similar to plaintiff's own testimony. <u>See</u> ECF No. 14 at 12 ("[t]hey both provided information similar to [plaintiff] in that, while she is not severely incapacitated, she does have functional limitations and experiences pain when engaging in activities on a sustained basis."). When the ALJ provides clear and convincing reasons for discounting a claimant's testimony and the third-party lay witness's testimony is similar to the claimant's testimony, the ALJ's reasons for discounting the claimant's testimony may also constitute germane reasons for rejecting the third-party lay witness's testimony. <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 694 (9th Cir. 2009); <u>see also</u> <u>Molina</u>, 674 at 1114. Furthermore, even when the ALJ errs by failing to explain his or her reasons for disregarding a layperson's testimony, such error is harmless if that layperson's testimony largely reflects the limitations described by the claimant and the ALJ provides clear and convincing reasons for discounting the claimant's testimony, because the layperson's testimony in such a circumstance is "inconsequential to the ultimate nondisability determination in the context of the record as a whole." <u>Molina</u>, 674 F.3d at 1122 (quotation marks omitted). Accordingly, even assuming, without deciding, that the ALJ did not properly consider the third party statements provided by plaintiff's mother and daughter-in-law such an error would have been harmless because, as discussed above, the ALJ provided clear and convincing reasons for discounting plaintiff's similar testimony.